UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELIQUE GUYAUX,                          Case No. 13-12076

           Plaintiff,               Paul D. Borman
v.                                         United States District Judge

SOCIAL SECURITY, COMMISSIONER OF           Michael Hluchaniuk
                                           United States Magistrate Judge
           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 15)**

I.    **PROCEDURAL HISTORY**

    A.    <u>Proceedings in this Court</u>

On May 10, 2013, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Paul D.

Borman referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for supplemental security

income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 12, 15).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on August 11, 2010, alleging that her

disability began on February 14, 2005.  (Dkt. 8-2, Pg ID 48).  The claim was

initially disapproved by the Commissioner on November 22, 2010.  (Dkt. 8-2, Pg

ID 48).  Plaintiff requested a hearing and on August 23, 2011, plaintiff appeared

with counsel before Administrative Law Judge (ALJ) James J. Kent, who

considered the case *de novo*.  In a decision dated September 9, 2011, the ALJ

found that plaintiff was not disabled.  (Dkt. 8-2, Pg ID 48-58).  Plaintiff requested

a review of this decision on October 12, 2011.  (Dkt. 8-2, Pg ID 44).  The ALJ's

decision became the final decision of the Commissioner when, after the review of

additional exhibits,[1] the Appeals Council, on March 8, 2013, denied plaintiff's

request for review.  (Dkt. 8-2, Pg ID 31-36); *Wilson v. Comm'r of Soc. Sec.*, 378

F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** under sentence four.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.    FACTUAL BACKGROUND

### A.    <u>ALJ Findings</u>

Plaintiff was 40 years of age on the date the application was filed.  (Dkt. 8-2, Pg ID 57).  Plaintiff has no past relevant work history.  (Dkt. 8-2, Pg ID 57).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the application date.  (Dkt. 8-2, Pg ID 50).  At step two, the ALJ found that plaintiff's depression, anxiety, back pain, and Diabetes Mellitus were "severe" within the meaning of the second step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 8-2, Pg ID 50).  At step four, the ALJ found plaintiff could perform sedentary work as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can lift and/or carry ten pounds occasionally and less weight more frequently. She can stand for 15 minutes and sit for 20 minutes. The claimant would require a sit/stand option. She can frequently balance and only occasionally kneel, crouch, crawl, and climb ramps or stairs but never climb ladders, ropes, or scaffolds. The claimant could occasionally reach overhead with the right upper extremity. She should avoid concentrated exposure to cold, humidity, wetness, vibration, and environmental irritants and poorly ventilated areas. The claimant is limited to performing routine, two-step tasks on a sustained basis with only occasional interaction

with the public or coworkers.

(Dkt. 8-2, Pg ID 52).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 8-2, Pg ID 57-58).

     B.    <u>Plaintiff's Claims of Error</u>

Plaintiff asserts several claims of error relating to the ALJ's treatment of various treating physician opinion evidence.  First, plaintiff contends that the ALJ fails to note, discuss, or assign a weight to the opinion from treating physician Dr. Mahfooz and then erroneously attributes Dr. Mahfooz's opinion of no lifting over five pounds and no standing for more than two hours to psychiatrist Dr. Binkley, but does not directly address Dr. Mahfooz's opinions regarding lifting or standing. Further, the ALJ formulated an RFC with a restriction of lifting up to 10 pounds and a sit/stand option without addressing Dr. Mahfooz's opinions.  Plaintiff also points out that Dr. Mahfooz's opinions of 11/05/2008 are consistent with the 11/10/2010 opinions from treating physician Dr. Ezzedine, who states that plaintiff can only lift or carry less than 10 pounds occasionally.  According to plaintiff, the ALJ committed reversible error when he failed to acknowledge that Dr. Mahfooz had expressed an opinion that plaintiff could not lift more than five pounds, fails to assign any weight to Dr. Mahfooz's opinion, and fails to state why the opinion is not entitled to any weight.

Next, plaintiff argues that the ALJ incorrectly gave Dr. Ezzedine's opinions "little weight." While the ALJ described this opinion as "conclusory" and without any explanation of the supporting evidence, plaintiff asserts Dr. Ezzedine explained that plaintiff suffered from chronic back pain because of her degenerative disc disease and that her chronic pain limits any meaningful activity. Plaintiff points out that the ALJ is required to determine whether a treating physician opinion is well-supported with other substantial evidence and asserts that the ALJ's decision failed in this regard. In addition, plaintiff asserts that the ALJ failed to give good reasons for giving Dr. Ezzedine's opinion little weight. Plaintiff maintains that the ALJ's reasons are not "good reasons" and there is no explanation from the ALJ regarding the factors listed in 20 C.F.R. § 1527(d).

Plaintiff also contends that the ALJ erred in giving treating psychiatrist Dr. Binkley's opinion only "some weight" because the weight was unspecified and he failed to incorporate the limitations imposed by Dr. Binkley into the RFC. The ALJ reviewed treating psychiatrist Dr. Binkley's records from 2007 through 2009, noting GAF scores of 50, 55, and 40. The ALJ stated that GAF scores are subjective assessments used by doctors on how a particular patient is doing on one particular day. According to plaintiff, the ALJ gave the GAF assessments "only some weight" on the basis that they show the previous condition of plaintiff and do not account for the period under consideration in this claim "or claimant's

recent improvement." Plaintiff contends that the ALJ failed to address whether Dr. Binkley's opinions were well-supported by the medical evidence of record, or whether there was any substantial evidence inconsistent with Dr. Binkley's opinions as required by 20 C.F.R. 404.1527(c). A Mental Residual Functioning Capacity Assessment by Dr. Binkley dated 10/06/2008 notes marked limitations in two areas of functioning and moderate limitations in three additional areas. A Mental Residual Functioning Capacity Assessment by Dr. Binkley of 09/14/2009 indicates moderate limitations in nine areas of functioning. According to plaintiff, the reasons proffered by the ALJ are not "good reasons" for assigning "little weight" to the opinion of a treating physician as required by 20 CFR 404.1572(d)(2). According to plaintiff, the ALJ's contention that plaintiff's GAF scores are merely "subjective assessments" valid for only a "particular day" has no support in the medical evidence of record. Plaintiff contends that the GAF, as the Axis V diagnosis of the DSM-IV diagnostic formulation, is no more limited to a "particular day" than an Axis I diagnosis of bipolar disorder. The Social Security Administration's Administrative Message AM-13066 (July 22, 2013) states that "a GAF rating is a medical opinion as defined in 20 C.F.R. 404.1527(a)(2) and 416.927(a)(2)."

Plaintiff also asserts that the ALJ's finding that Dr. Binkley's assessments "do not account for the period under consideration" is erroneous. Plaintiff applied

Report and Recommendation
Cross-Motions for Summary Judgment
*Guyaux v. Comm'r*; Case No. 13-12076

for Title XVI benefits on 8/11/2010.  Although Dr. Binkley examined and treated plaintiff in 2008 and 2009, Dr. Binkley also performed a psychiatric evaluation on 09/16/2010 providing the diagnosis of bipolar I disorder, mixed with psychosis and a GAF score of 45-50.  According to plaintiff, Dr. Binkley's longitudinal treatment relationship with plaintiff in 2007, 2008, 2009, and 2010 provides a basis for giving Dr. Binkley's opinions substantial, if not controlling weight.

Plaintiff also argues that Dr. Binkley's opinions further are well-supported by the medical evidence of record.  A psychiatric evaluation by Dr. Binkley on 11/12/2007 provides the diagnoses of bipolar disorder and social anxiety disorder with a GAF score of 50.  Dr. Binkley's psychiatric/psychological examination report of 10/06/2008 provides the diagnoses of bipolar disorder type II, social anxiety disorder, and ADHD-inattentive with a current GAF of 55.  Under "current symptomatology," Dr. Binkley notes that plaintiff has recurrent depression, social anxiety, and attention deficit disorder, which makes it difficult to maintain consistent work attendance and functioning.  Social anxiety and depression make it difficult to work a full day without significant difficulty with ability to work around others.  Dr. Binkley's psychiatric/psychological examination report of 09/14/2009 provides the diagnosis of a current GAF score of 40 and a GAF in the last year of 50.  Under "general observations," Dr. Binkley notes that plaintiff is "unable to work for past 16 years due to health, psychiatric reasons."  Under

"current symptomatology," Dr. Binkley identifies, "Long term attention deficit symptoms, mood swings, possible hypomania and depressive symptoms. Tends to be circumstantial in thought process. Has chronic ADD symptoms, has problems with social and general anxiety. Has history of repeated mood swings with possible hypomania and depressive symptoms, which impair her ability to function. Has inadequate general information of current events, impaired short term memory and concentration. Marginal ability to abstract think." In a psychiatric evaluation of 09/16/2010, Dr. Binkley provides the diagnoses of bipolar I disorder mixed with psychosis and a history of learning disability with a GAF score of 45-50. Plaintiff presents with complaints of rapid speech, racing thoughts, mood swings all her life, decreased motivation, more tired now, and auditory hallucinations in which she hears mumbling all the time for all of her life. She also reports panic attacks with shortness of breath and stabbing pain, mostly in crowds or if left alone. Plaintiff contends that had the ALJ properly given controlling weight to the opinions of Dr. Binkley, a finding of disabled would have been indicated.

The ALJ also gave the opinion of treating psychiatrist Dr. Gill, with a GAF score of 52, little weight on the basis that actual treatment visits were infrequent and the opinion is not consistent with medical evidence as a whole. (Tr. 25-26). According to plaintiff, Dr. Gill's opinions are consistent with the medical evidence

of record, and are consistent with the opinions of both Dr. Binkley and therapists Ms. Wendling and Mr. McGhee.  Plaintiff contends that the reasons proffered by the ALJ Decision are not "good reasons" for assigning "little weight" to the opinion of a treating physician as required by 20 CFR 404.1572(d)(2).  According to plaintiff, the ALJ failed to identify any specific portion of the medical evidence of record that is inconsistent with Dr. Gill's opinion.  The ALJ's conclusory statement that Dr. Gill's opinion was not consistent with the medical evidence fails to identify the basis of this conclusion.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-246 (6th Cir. 2007).  Plaintiff contends that the ALJ's unsupported conclusion is not a "good reason" for failing to give substantial weight to the opinion of Dr. Gill as required by 20 C.F.R. 404.1572(d)(2).

Plaintiff also points to the medical evidence of record, which demonstrates that plaintiff treated at List Psychological from 2007 through the date of the hearing in 2011.  While plaintiff was seen by more than one psychiatrist at List during this time, and although she would see therapists more frequently between her visits with the psychiatrists, she argues that there is no basis in the medical evidence of record that plaintiff's "actual treatment visits have been relatively infrequent."  (Tr. 25-26).  The List Psychological Medication Review of 10/12/2010 notes that plaintiff reports very little change.  Auditory hallucinations (mumbling) persist.  Dr. Gill notes easy distractibility.  Dr. Gill increased her

dosage for Depakote and Effexor and adds Fanapt for psychosis. (Tr. 510). The progress note of 11/01/2010 notes labile affect, depressed and anxious mood, and tangential thinking. A note is made of auditory hallucinations. She complained of rapid speech, auditory hallucinations (mumbling), and racing thoughts. Her treatment plan progress is identified as minimal. Functioning is identified as moderately impaired. (Tr. 511). A List Psychological Medication Review by Dr. Gill of 11/09/2010 reports that she is beginning to be hyperverbal again and the voices persist. Dr. Gill increased her Depakote prescription, discontinued Effexor, and prescribed Saphris for psychosis and mood stabilization. (Tr. 512). The Medication Review by Dr. Gill of 01/13/2011 notes mood swings and auditory hallucinations. (Tr. 514). Plaintiff contends that the opinions of treating psychiatrist Dr. Gill are supported by the clinical treatment record, are consistent with the opinions of both Dr. Binkley and therapists Ms. Wendling and Mr. McGee, and are entitled to controlling weight.

Plaintiff also objects to the ALJ's decision to give treating therapist Linda A. Wendling's opinions from 08/2010, finding a GAF of 52 (Tr. 499), "little weight" to the extent that they are not consistent with the medical evidence of record. (Tr. 26). The ALJ also states that Ms. Wendling is not an acceptable medical source. According to plaintiff, the ALJ's decision violates 20 C.F.R. 404.1514(d) and SSR 06-03p in assigning little weight to the opinions of mental

health therapist Ms. Wendling on the basis that she was not an "acceptable medical source."  The Commissioner may consider evidence from "medical sources" that are not "acceptable medical sources," such as physicians' assistants. 20 C.F.R. 404.1502 and 416.902.  The Commissioner is required to weigh opinion evidence from "other sources" and is required to evaluate such opinion evidence "on key issues such as impairment severity and functional effects," along with the other relevant evidence in the file.  SSR 06-03p.  The ALJ is required to evaluate every medical opinion received, 20 C.F.R. 404.1527(b), and to provide "good reasons" for the weight given to a treating source's opinion.  20 C.F.R. 404.1527(d)(2).  Plaintiff contends that Ms. Wending's opinions are consistent with the medical evidence of record and are consistent with the opinions of Dr. Binkley, Dr. Mahfooz, and Dr. Gill.  And, plaintiff argues that the reasons proffered by the ALJ are not "good reasons" for assigning "little weight" to the opinion of a treating physician as required by 20 C.F.R. 404.1572(d)(2). According to plaintiff, the ALJ's broad assertion that Ms. Wendling's opinion is not consistent with the medical record is inadequate.  While the ALJ point out Ms. Wendling's progress note of 08/19/2010, the ALJ failed to note Ms. Wendling's extensive psychosocial assessment of 08/19/2010.  The assessment provides a diagnosis of bipolar disorder, rule out social anxiety disorder, rule out ADHD, and learning issues with reading and spelling with a current GAF score of 52.  (Tr.

474).  Ms. Wendling's opinions are well-documented in the psychosocial

assessment and are supported by an extensive clinical record.  Plaintiff contends

that opinions by "another source" such as therapist Ms. Wendling can be

controlling if well supported by the medical evidence of record.  Had the ALJ

properly given therapist Ms. Wendling's opinions substantial weight, plaintiff

asserts that a finding of disabled would have been indicated.

The ALJ also points to treatment by therapist Bruce McGee at Tuscola

Behavioral Health Systems (TBHS) from March through May of 2010 with a GAF

of 50.  (Tr. 325, 332).  The ALJ state that "[t]he regulations do not permit an

assignment of weight, and even if Mr. McGee were an acceptable medical source,

little weight would be given to his diagnosis because he appears to diagnose the

claimant on purely subjective complaints."  (Tr. 26).  According to plaintiff, the

ALJ erred in finding that the regulations do not permit an assignment of weight to

the opinions of a mental health therapist.  Again, the Commissioner may consider

evidence from "medical sources" who are not "acceptable medical sources," such

as physicians' assistants and therapists.  20 C.F.R. 404.1502 and 416.902.  The

Commissioner may use evidence from "other sources."  20 C.F.R. 404. 1514(d)

and 416.913(d).  Indeed, SSR 06-03p requires the Commissioner to weigh opinion

evidence from "other sources": "Opinions from these medical sources, who are not

technically deemed 'acceptable medical sources' under our rules, are important

and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Plaintiff contends that the ALJ in this case violates 20 C.F.R. 404.1514(d) and SSR 06-03p in not assigning any weight to the opinions of therapist Mr. McGee.

According to plaintiff, there is no basis in the record for the ALJ's conclusion that Mr. McGee's opinions are based on "purely subjective complaints." (Tr. 26). The clinical records document clinical observations of plaintiff's mood, affect, appearance, demeanor, insight, judgment, and rapport. A patient's "subjective complaints" or reports of mood, symptoms, and behavior are essential parts of psychiatric treatment. Any psychiatric treatment and diagnosis must take into account the patient's reports of her symptoms. Plaintiff contends that the ALJ fails to provide any valid reasons for giving no weight or very little weight to Mr. McGee's opinions. Plaintiff also points out that a TBHS psychosocial assessment by Mr. McGee dated 03/02/2010 provides a diagnostic impression of bipolar I disorder, most recent episode unspecified, and generalized anxiety disorder with a GAF of 50. (Tr. 317-325). Mr. McGee notes that plaintiff reports her current symptoms as having severe problems with anxiety, mood changes, lack of energy, and withdrawal from others. She reports serious problems with depression, being over-suspicious of others, a sense of over-dependence, and having audio-visual perceptions/distortions ("light flashes and

Report and Recommendation
Cross-Motions for Summary Judgment
*Guyaux v. Comm'r*; Case No. 13-12076

whispers"). Plaintiff could not perform serial sevens. The Duke's Anxiety and Depression Screening indicates possible elevated symptoms at a severe level. (Tr. 324 ). Mr. McGee's 03/08/2010 note indicates that plaintiff's behavior is hyperactive and her mood is anxious. She discusses her social anxiety and how she does not like to leave the house. (Tr. 327). The note of 03/22/2010 indicates her mood is anxious. She expresses anxiety during the session and displays fidgety behavior, such as shaking legs. (Tr. 328). The discharge summary by Mr. McGee of 05/16/2010 provides the discharge diagnosis of bipolar I disorder and generalized anxiety disorder with a GAF of 52. (Tr. 331-333). According to plaintiff, Mr. McGee's opinions are consistent with those of psychiatrists Dr. Binkley and Dr. Gill, and with therapist Ms. Wendling. The opinions are supported by an extensive clinical record of treatment. Plaintiff contends that, had substantial weight been given to therapist Mr. McGee's opinions, a finding of disabled would have been indicated.

The ALJ found that plaintiff has the residual functional capacity to perform sedentary work, except that she can lift and/or carry 10 pounds occasionally and less weight more frequently; she can stand for 15 minutes and sit for 20 minutes; she would require a sit/stand option. (Tr. 22). According to plaintiff, the ALJ cites no evidence of record to support the specific functional capacities adopted. There is no reference to any medical finding that plaintiff can lift 10 pounds

occasionally, stand for 15 minutes, or sit for 20 minutes.  There is no residual

functional capacities assessment by a state agency examiner or physician in the

medical record that supports these findings.  Plaintiff maintains that the physical

functional capacities adopted by the ALJ are contrary to the opinions of treating

physicians Dr. Ezzedine and Dr. Mahfooz.

Plaintiff also asserts that the limitations indicated by Dr. Ezzedine and Dr.

Mahfooz are supported by objective diagnostic test results and by plaintiff's

significant treatment record.  A lumbar MRI of 02/22/2005 indicates disc

desiccation at the L5-S1 level, mild disc bulging at L4-5 and L5-S1, and an

annular tear along the posterior central margin of the L5-S1 disc.  (Tr. 252).  Dr.

Touma provides the assessment of chronic back pain on 01/10/2006.  (Tr. 269).

Dr. Schell's report of 02/15/2006 states, "I do believe that under the

circumstances, she has degenerative disc disease which is quite painful at times

...." (Tr. 259).  Plaintiff had a Kenalog block injection on 08/24/2006 which did

not help.  (Tr. 289).  On 09/21/2006, Ultram for pain was not working.  (*Id*., p.

11).  On 11/16/2006, Darvocet was not helping pain.  (*Id*. p 9).

A Care Health Plaza note of 02/15/2008 indicates a complaint of lower back

pain that is sharp and radiates to both legs; both legs are numb.  Examination

indicates bilateral positive straight leg-raising.  An injection of Toradol is

administered.  (Tr. 367).  The Care Health Plaza note of 06/14/2008 indicates a

complaint of lower back pain which is continual.  Vicodin and nerve blocks did

not work.  (Tr. 370).  The visit note of 06/17/2008 notes chronic back pain. (Tr.

372).  The office note of 08/16/2008 provides a history of degenerative disc

disease and notes a complaint of bilateral hip and back pain.  The assessment is

degenerative disc disease.  (Tr. 375).  A Bay Regional Pain Management

consultation report of 10/15/2008 provides the assessment of mechanical low back

pain, facet joint arthropathy, and lumbar radiculopathy.  Musculoskeletal

examination indicates tenderness over facet joints, lower lumbar spine bilaterally,

and mild to moderate limitations of range of motion of exoskeleton in all

directions.  (Tr. 302-313).  The Bay Regional Pain Management operative notes of

10/27/2008, 11/11/2008, and 11/24/2008 are for a trans-laminar left L5-S1

epidural steroid injection.

The pain management progress report of 01/14/2009 provides the

assessment of lumbar radiculopathy and facet joint arthropathy, with the note that

the three epidural steroid injections did not help much.  (Tr. 302-313).  The Caro

Health Plaza note of 12/8/2008 indicates a complaint of pain in lower back.

Examination indicates left lower back pain on palpation.  (Tr. 380). The

assessment of 02/09/2009 is back pain.  Tylenol is not working.  (Tr. 387). The

note of 04/21/2009 provides an assessment of chronic back pain.  (Tr. 393). The

office note of 08/03/2009 provides the assessment of obesity and back ache.  (Tr.

416).  The office note of 07/07/2010 notes complaints of back pain and degenerative disc disease.  (Tr. 448).  The visit note of 08/12/2010 notes a complaint of low back pain.  (Tr. 488).  The 09/01/2010 MRI of the lumbar spine provides the impression of mild degenerative disc disease and facet arthropathy without spinal stenosis or nerve root compression, central annular tear at L4-L5, small central nuclear protrusion/herniation at L5-S 1 which does not contact nerve roots, and mild narrowing of the L5-S1 neural foramina.  (Tr. 482).  The Caro Health Plaza office note of 10/11/2010 notes chronic back pain.  She is prescribed Darvocet.  (Tr. 484).  The visit note of 10/15/2010 provides the impression of low back pain with a central tear per MRI.  (Tr. 485).  The assessment of 01/15/2011 is chronic back pain with exacerbation. She is given an injection of Toradol.  (Tr. 530).  The visit note of 03/02/2011 indicates a complaint back pain.  Ultram is prescribed for the back pain.  (Tr. 518).  The visit note of 03/10/2011 notes that Tylenol 3 is prescribed for back pain.  (Tr. 518).

Plaintiff contends that the medical evidence of record provides more than five years of clinical records confirming plaintiff's complaints of significant pain with prescriptions of pain medications and several courses of injection therapy. Thus, according to plaintiff, there is no basis in the record to support an exertional ability greater than that indicated by Dr. Ezzedine and Dr. Mahfooz.

Finally, plaintiff argues that the ALJ erred by giving considerable weight

to the opinion of consulting psychologist Dr. Date, who examined plaintiff 17 months prior to the date of plaintiff's current application for benefits. The ALJ noted that consultative psychiatrist Dr. Date finds that plaintiff had a labile mood and needed redirection during the examination, and that plaintiff had impaired judgment, concentration, attention, and ability to focus, "but at most moderately and only mildly impaired in responding to change, but not impaired in interacting with others." (Tr. 25). The ALJ pointed out that Dr. Date noted plaintiff had manic and depressive symptoms with a GAF score of 50. The ALJ found that Dr. Date's opinion was well-supported by medically acceptable techniques and was not inconsistent with other substantial evidence of record and thus, gave the opinion considerable weight. (Tr. 25). The opinion of a non-examining physician is, however, entitled to little weight if contrary to the opinion of a treating doctor. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). And, plaintiff asserts that the proper standard for evaluating the weight of the treating doctor's opinion is whether the limitations of the treating doctor are supported by the record, not whether a reviewing doctor disagrees with the limitations. In *Gayheart v. Commissioner*, 710 F.3d 365 (6th Cir. 2013), the Sixth Circuit stated: "Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and non-examining doctors. Otherwise the treating-physician-rule would have no practical force ...."

Plaintiff points out that Dr. Date's consultative evaluation of 04/17/2008 (Tr. 291-96) was performed 17 months prior to the date of plaintiff's current application and thus, Dr. Date did not have the benefit of plaintiff's 2009, 2010, and 2011 clinical psychiatric treatment records at the time of that evaluation, and did not have the benefit of the opinions of treating psychiatrists Dr. Binkley and Dr. Gill. Thus, according to plaintiff, there is no basis for finding that Dr. Date's opinion is supported by substantial evidence if it is inconsistent with the opinions of plaintiff's treating psychiatrists.

Dr. Date provides the diagnoses of bipolar disorder with both psychological factors and general medical condition with a GAF of 50. (Tr. 295-96). The examiner notes, "Claimant's chronic pain has impaired her functioning in most domains, and she reported a high level of daily physical pain." (Tr. 295). The examiner also notes reports that "her manic moods last for approximately two days. She described depressive symptoms meeting full criteria...." *Id*. If Dr. Date's opinions are entitled to substantial weight, plaintiff contends, then the ALJ erred by not incorporating any limitation into plaintiff's RFC related to manic moods lasting for two days.

C.   The Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ properly evaluated Dr. Ezzeddine's opinion. In November 2010, Dr. Ezzedine completed a "check-box"

questionnaire indicating that plaintiff could only occasionally lift 10 pounds or less and could not work.  (Tr. 493-94).  An opinion that a claimant is unable to work is not a "medical opinion," but rather is a legal opinion on an issue reserved to the Commissioner.  20 C.F.R. § 416.927(d)(2).  "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."  Social Security Ruling (SSR) 96-5p, 1996 WL 374183, *2 (emphasis added); *see also* 20 C.F.R. § 416.927(d)(3).  Indeed, giving deference to a treating source's opinion that a claimant cannot work "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p, 1996 WL 374183, *2.  Thus, the Commissioner contends that the ALJ was not obligated to adopt or credit Dr. Ezzaddine's conclusory legal opinion concerning plaintiff's inability to work.  Moreover, Dr. Ezzaddine's opinion would be entitled to controlling weight only if it was well-supported by medically-acceptable clinical and laboratory diagnostic techniques and was consistent with other substantial evidence in the record.  According to the Commissioner, the ALJ explained that Dr. Ezzeddine's opinion was entitled to little weight because he failed to provide any explanation or cite any evidence in support of his opinion.  (Tr. 26).  Dr. Ezzaddine simply reiterated that plaintiff was

2:13-cv-12076-PDB-MJH   Doc # 16   Filed 07/15/14   Pg 21 of 57   Pg ID 676

diagnosed with degenerative disc disease and bipolar disorder (Tr. 493), but a diagnosis says nothing about the severity of the condition. The absence of progress notes and other medical records regarding the treatment provided by Dr. Ezzaddine "for the period at issue entitles his unadorned opinion virtually no weight." *Bruze v. Comm'r of Soc. Sec.*, 2008 WL 3979261 (W.D. Mich. 2008). To the extent that Dr. Ezzaddine opined that plaintiff could not lift more than 10 pounds occasionally, the ALJ limited plaintiff to sedentary work, which requires lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). Thus, the Commissioner contends that the ALJ's findings should not be disturbed.

The Commissioner also contends that Dr. Mahfooz's opinion was consistent with the ALJ's findings. Dr. Mahfooz opined that plaintiff could work as long as she did not lift five pounds or stand for two or more hours. (Tr. 542). Although the ALJ does not discuss how much weight he gave to this opinion, any error is harmless because the ALJ credited the part of Dr. Mahfooz's opinion that was consistent with the medical evidence. Specifically, Dr. Mahfooz's opinion that plaintiff could not stand for two or more hours is consistent with the requirements of sedentary work, which involves sitting about six hours and standing for about two hours in an eight-hour workday. 20 C.F.R. § 416.967(a). "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are

met. 'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday." SSR 96-09, 1983 WL 31251, *5.  Although Dr. Mahfooz opined that plaintiff could not lift more than five pounds, the Commissioner contends that the ALJ could not reasonably credit such a restriction because it was inconsistent with plaintiff's descriptions of how much weight she could carry.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (not providing good reasons for rejecting treating physician's opinion may be harmless error when the opinion is patently deficient.).  Plaintiff estimated that she could carry up to 10 pounds or at least a gallon of milk.  (Tr. 51); *see Brown v. Sec'y of Health & Human Servs.*, 1990 WL 121472, at *2 (6th Cir. 1990) ("[S]he had no problem lifting a gallon of milk (which weighs 8 pounds . . . .)").  Plaintiff broadly argues that her treatment notes support the opinions of Drs. Ezzaddine and Mahfooz.  As noted above, the ALJ considered plaintiff's treatment history and acknowledged that plaintiff's back problem was a severe impairment.  (Tr. 20).  According to the Commissioner, plaintiff has not shown that her treatment notes reflect disabling limitations.

The ALJ found that plaintiff's depression and anxiety were severe impairments that limited her ability to work.  (Tr. 20).  After reviewing the evidence, the ALJ restricted plaintiff to routine, two-step tasks with only

occasional interaction with the public or coworkers.  (Tr. 22).  In making this determination, the Commissioner contends that the ALJ properly considered the opinions from Dr. Binkley.  (Tr. 25).  In October 2008, Dr. Binkley prepared a report for state disability benefits and noted that plaintiff was markedly limited in her ability to ask simple questions, request assistance, accept instructions and respond appropriately to criticism from supervisors, or get along with co-workers/peers without distracting them or exhibiting behavioral extremes.  (Tr. 541).  Dr. Binkley also indicated that plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting and in traveling to unfamiliar places, but not limited in her ability to maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, be aware of normal hazards, or to set realistic goals or make plans independently of others. (Tr. 541).

In September 2009, Dr. Binkley provided an updated assessment and noted that plaintiff was not significantly limited in her ability to understand, remember, and carry out two-step instructions and had only moderate limitations in her ability to perform detailed instructions, maintain attention and concentration for extended periods, and make simple work-related decisions.  (Tr. 545).  With respect to her social abilities, Dr. Binkley found that plaintiff had significant improvement since October 2008.  She was only moderately limited in her ability to interact with the

general public and respond appropriately to criticism and had no limitations in her ability to ask simple questions or request assistance. (Tr. 545). In addition, Dr. Binkley noted that plaintiff had mild limitations in her ability to get along with coworkers and maintain socially appropriate behavior. (Tr. 545). The ALJ gave Dr. Binkley's opinions "some weight." (Tr. 25). Consistent with Dr. Binkley's opinion, the ALJ limited plaintiff to perform routine, two-step tasks on a sustained basis. (Tr. 22). With respect to plaintiff's social difficulties, the ALJ restricted plaintiff to only occasional interaction with the public or coworkers. (Tr. 22). According to the Commissioner, the ALJ's finding is consistent with Dr. Binkley's September 2009 assessment and his finding that plaintiff's condition had improved. (Tr. 545). The Commissioner contends that plaintiff has failed to show any material inconsistency between Dr. Binkley's September 2009 opinion and the ALJ's RFC assessment.

The ALJ also noted that over the course of treatment, Dr. Binkley assigned plaintiff various global assessment of functioning (GAF) scores between 40 and 55, which reflected serious to moderate limitations, but reasonably declined to give significant weight to those scores. The ALJ explained that the GAF scores were inconsistent with each other and with the medical evidence of record as a whole. (Tr. 25). *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (*en banc*) ("[T]he ALJ [reasonably found] . . . that others of Dr. Templin's many

medical assessments of Combs were inconsistent with this assessment, and that Dr. Templin was therefore less than credible."). For example, Dr. Binkley's assessment that plaintiff had a GAF score of 40, reflecting serious limitations, was inconsistent with his overall opinion that, at most, plaintiff had moderate limitations on her ability to work. (Tr. 545). In addition, Dr. Binkley's September 2009 opinion did not reflect that plaintiff's impairments would be disabling or cause greater workplace limitations than the ALJ found. Given these inconsistences, the Commissioner maintains that the ALJ reasonably declined to give Dr. Binkley's opinion significant weight.

Plaintiff argues that the ALJ should have given greater weight to the opinions of her treating psychiatrist, Niru Gill, M.D., and therapist, Linda Wendling, both of whom assigned plaintiff a GAF score of 52. Although the ALJ gave these scores little weight, in actuality, the scores were consistent with the ALJ's RFC finding. As noted above, a GAF score of 52 reflects moderate limitations. Even assuming those GAF scores were determinative, the Sixth Circuit has previously found that a GAF score as low as 50 is consistent with the ability to work. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007); *see also Nelson v. Comm'r of Soc. Sec.*, 195 Fed.Appx. 462 (6th Cir. 2006) (GAF of 50 not disabling). The Commissioner contends that the ALJ's RFC finding accounts for plaintiff's moderate limitations by restricting the complexity

and type of work plaintiff could perform and by restricting her ability to work with others.  (Tr. 22).  According to the Commissioner, plaintiff has not explained why a GAF score of 52 would reflect greater limitations than the ALJ found.

Similarly, plaintiff contends that the ALJ should have given greater weight to the opinion of her therapist, Bruce McGhee.  Mr. McGhee saw plaintiff during her initial assessment and two outpatient sessions, but he noted that the impact of treatment was unknown because plaintiff discontinued her attendance after two sessions.  (Tr. 331).  He diagnosed her with bipolar disorder and generalized anxiety disorder and assigned a GAF score of 50.  (Tr. 331).  According to the Commissioner, the ALJ reasonably gave this opinion no weight.  (Tr. 26).  The ALJ properly noted that Mr. McGhee was not an acceptable medical source as defined by the regulations.  (Tr. 26); *see* 20 C.F.R. § 416.913(a).  Only acceptable medical sources can offer medical opinions.  20 C.F.R. § 416.927(a)(2).  "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because, as we previously indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000, 'acceptable medical sources' 'are the most qualified health care professionals.'"  SSR 06-03p, 2006 WL 2329939, at *5.  In any event, the Commissioner contends that the ALJ did not summarily reject Mr. McGhee's opinion because he was not an acceptable

medical source.  The ALJ also noted that Mr. McGhee's opinion was based largely on plaintiff's subjective complaints.  (Tr. 26); *see Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 156 (6th Cir. 2009) ("Here, substantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to deference because it was based on Poe's subjective complaints, rather than objective medical data."); *see also McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) (ALJ reasonably discounted treating physician's opinion where the claimant's subjective complaints were unsupported by objective findings).  Mr. McGhee's summary of plaintiff's condition was based on plaintiff's description of her problems.  (Tr. 331).  Moreover, plaintiff's mental status examination results were largely normal.  Although she could not complete her serial sevens, she was oriented and her memory was within normal limits.  (Tr. 331).  According to the Commissioner, Mr. McGhee does not discuss any other objective evidence that would reflect the "serious" problems indicated in his GAF score.  Therefore, the ALJ reasonably gave Mr. McGhee's GAF assessment no weight.  (Tr. 26).

Plaintiff also faults the ALJ for giving weight to the opinion of Ann Date, Psy.D., who evaluated plaintiff in April 2008.  On examination, plaintiff displayed normal findings when Dr. Date tested her memory and ability to process information, perform basic calculations, recognize similarities and differences,

think abstractly, and exercise judgment.  (Tr. 294-95).  Dr. Date diagnosed

plaintiff with bipolar disorder and pain disorder and assigned a GAF score of 50,

reflecting serious limitations and just below the range reflecting moderate

limitations.  (Tr. 295-96).  The Commissioner contends that the ALJ properly gave

this opinion considerable weight to the extent that it was reflective of plaintiff's

ability to engage in sustained work-related activities.  (Tr. 25).

Plaintiff argues that Dr. Date's opinion should not have been entitled to

weight because she did not have the benefit of reviewing plaintiff's treatment

notes after she evaluated Plaintiff.  However, Dr. Date examined plaintiff during

the time that she alleged she had disabling mental limitations and her report is

relevant to the period at issue.  Moreover, the Commissioner asserts that plaintiff

has failed to explain or show why her subsequent treatment notes would

undermine Dr. Date's opinion.  Significantly, plaintiff's argument is undermined

because her updated medical record was reviewed by Judy Strait, Psy.D., on behalf

of the state agency responsible for making disability determinations.  Dr. Strait

concluded that plaintiff retained the capacity to perform routine, two-step tasks on

a sustained basis.  (Tr. 83-84).  She also found that plaintiff would work best alone

or in a small, familiar group.  (Tr. 83-84).  The Commissioner contends that Dr.

Strait's opinion is substantial evidence in support of the ALJ's decision.

Although plaintiff may disagree with the ALJ's basis for rejecting the

opinions of her treating physicians, the Commissioner maintains that the ALJ's evaluation of those opinions was well within the zone of reasonable choice. *See Mullen v. Bowen*, 800 F.2d 535, 595 (6th Cir. 1986). The substantial evidence standard presupposes that there is a zone of choice within which the ALJ can make a decision without interference by the courts. *Blakely*, 581 F.3d at 406. "Given the number of physicians and the variation in their opinions, almost any decision that the ALJ could have rendered would have required him to discredit the opinion of at least one physician." *Gaskin v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 472, 476 (6th Cir. 2008). Accordingly, the Commissioner asks this Court to find that ALJ did not commit reversible error in how he weighed the medical opinion evidence. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

        1.    Physical Limitations

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source

is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  SSR 96-2p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'"  *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).  "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  "The

opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003). Courts have remanded the Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source, as § 1527(d)(2) requires. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

Notably, the Dr. Mahfooz and Dr. Ezzedine were physicians from the same practice, where plaintiff was a long-term patient. One of them offered an opinion regarding her physical limitations in 2008 and the other offered an opinion in 2010 and 2011. The ALJ and the Commissioner treat these opinions as entirely separate. The ALJ failed to mention or analyze Dr. Mahfooz's opinion altogether and Dr. Ezzedine's opinion was treated by the Commissioner as though there were no supporting treatment notes. It seems much more reasonable and logical to consider these opinions together, as they involve a continuum of care provided by this medical practice to plaintiff over the course of at least five years. And,

contrary to the Commissioner's suggestion, the ALJ's RFC is not entirely

consistent with Dr. Ezzedine's opinion, given that he concluded in 2011 that

plaintiff could not sit, stand, or walk for any of amount of time in an eight hour

work day.  The undersigned finds the ALJ's rejection of this opinion based on the

bare statement that it is conclusory and not supported by the medical evidence to

be insufficient, given that Dr. Ezzedine's practice extensively treated plaintiff over

the course of five years.  And, given the long term treatment provided by Dr.

Mahfooz and his practice to plaintiff regarding her degenerative disc disease, the

failure to even discuss his opinion is not harmless error.

Moreover, if the ALJ determined that plaintiff's treating physicians'

opinions should not be given controlling weight despite the medical evidence in

support, "the ALJ must still determine how much weight is appropriate by

considering a number of factors, including the length of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a

whole, and any specialization of the treating physician." *Blakley v. Comm'r of*

*Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009).  This was not done either; rather, the

ALJ gave the opinions "little weight" without a discussion of these factors.   And,

even if Dr. Ezzedine's and Dr. Mahfooz's opinions were not entitled to controlling

weight, it was still entitled to deference.  20 C.F.R. § 404.1527(d)(2)(i).  As

explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating
> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial
> evidence in the case record means only that the opinion
> is not entitled to "controlling weight," not that the
> opinion should be rejected. Treating source medical
> opinions are still entitled to deference and must be
> weighed using all of the factors provided in 20 CFR
> 404.1527 and 416.927. In many cases, a treating source's
> medical opinion will be entitled to the greatest weight
> and should be adopted, even if it does not meet the test
> for controlling weight.

The ALJ failed to adequately address why these opinions should not be given

controlling weight or even deference, as required by the regulations.  20 C.F.R.

§ 404.1527(d)(2).  Thus, the undersigned concludes that a remand is necessary so

the ALJ may re-evaluate the treating physician opinions and all supporting

treatment evidence.

This case is also complicated by the fact that the ALJ did not rely on any

other medical opinions to determine equivalence.  The single-decision maker

(SDM) model was used pursuant to 20 C.F.R. § 404.906(b)(2).[2]  This regulation

---

[2] While plaintiff argued, in the context of the ALJ's analysis of the treating physician
evidence, that the ALJ erred because there were no other medical opinions in the record
regarding plaintiff's physical limitations, this precise issue was not raised by plaintiff.  However,
the Court raises this issue *sua sponte*, given the serious nature of the error and the pattern of
repetition of this same error since the implementation of the single decision-maker model in
Michigan and given that this matter will have to be remanded, in any event, for further
consideration of the treating physician opinion evidence.  Notably, in Social Security cases, the
failure to submit a particular legal argument is "not a prerequisite to the Court's reaching a
decision on the merits" or a finding, *sua sponte*, that grounds exist for reversal.  *Reed v. Comm'r
of Soc. Sec.*, 2012 WL 6763912, at *5 (E.D. Mich. 2012), citing *Wright v. Comm'r of Soc. Sec.*,

provides streamlined procedures as an experiment, in which State Agency

disability examiners may decide cases without documenting medical opinions

from State Agency medical consultants.  The "single decisionmaker model" was

an experimental modification of the disability determination process that happens

to have been used in Michigan.  *See Leverette v. Comm'r*, 2011 WL 4062380

(E.D. Mich. 2011).  This experiment eliminated the reconsideration level of review

and allowed claims to go straight from initial denial to ALJ hearing.  *Id*.  Most

significantly, it allowed the state agency employee (the single decisionmaker) to

render the initial denial of benefits without documenting medical opinions from

the state agency medical consultants.  *Id*., citing 20 C.F.R. §§ 404.906(b)(2),

416.1406(b)(2).  The Programs Operations Manual System (POMS) requires it to

"be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC

assessment form] was completed by an SDM because SDM-completed forms are

not opinion evidence at the appeal levels."  POMS DI § 24510.05.  Plaintiff's

physical impairments were evaluated by an SDM, Terri Rytkonen.  (Dkt. 8-3, Pg

ID 116).  Thus, no medical opinion was obtained at this level of review, in

accordance with this model.

---

2010 WL 5420990, at *1-3 (E.D. Mich. 2010), *adopted by* 2013 WL 53855 (E.D. Mich.  2013);
*see also Buhl v. Comm'r of Soc. Sec.*, 2013 WL 878772, at *7 n. 5 (E.D. Mich. 2013) (plaintiff's
failure to raise argument did not prevent the Court from identifying error based on its own review
of the record and ruling accordingly), *adopted by* 2013 WL 878918 (E.D. Mich. 2013).

While the ALJ did not rely on the opinion of the SDM, which would have

been wholly improper, the lack of any medical opinion on the issue of equivalence

is still an error requiring remand.  As set forth in *Stratton v. Astrue*, — F.Supp.2d

—; 2012 WL 1852084, *11-12 (D. N.H. 2012), SSR 96-6p describes the process

by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for
> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of the facts, an administrative
> law judge ... is not bound by a finding by a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding
> policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the
> issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the
> record as expert opinion evidence and given appropriate
> weight*.

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical

judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20

C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir.

1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an

ALJ who makes a step-three equivalence determination without expert-opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter. *Id.* at. *12; citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted). This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form. *Stratton*, at *12, citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006 WL 549305, at *3 (D. Me. 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D .... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question."). There is no Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff's physical

impairments in this record.  (Dkt. 8-3, Pg ID 118).

The great weight of authority[3] holds that a record lacking any medical advisor opinion on equivalency requires a remand.  *Stratton*, at *13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record); *Wadsworth v. Astrue*, WL 2857326, at *7 (S.D. Ind. 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing").

While the government has argued in other cases that courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM, *see Gallagher v. Comm'r*, 2011 WL 3841632 (E.D. Mich. 2011) and *Timm v. Comm'r*, 2011 WL 846059 (E.D. Mich. 2011), the undersigned does not find these cases persuasive.  In both cases, the court concluded that because the regulations permitted an SDM to make disability determination without a medical consultant that the ALJ is, therefore, also permitted to do so where the "single decisionmaker" model is in use.  Nothing about the SDM model

---

[3] In *Stratton*, the court noted that a decision from Maine "stands alone" in determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *Id.*, citing *Goupil v. Barnhart*, 2003 WL 22466164, at *2 n. 3 (D. Me. 2003).

changes the ALJ's obligations in the equivalency analysis. *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).

Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used. While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the ALJ's obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases. Thus, the undersigned's analysis does not alter the SDM model, which leaves the SDM discretion as to whether a medical expert is consulted as to physical impairments. Rather, the undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which do not otherwise appear to be modified by the SDM model. *See also*, *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and

requires a medical opinion on the issue of equivalence."); *Harris v. Comm'r*, 2013 WL 1192301, *8 (E.D. Mich. 2013) (A medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated.). Thus, remand is also required to obtain a medical opinion on equivalence.

> 2.     Mental limitations

The ALJ's analysis suffers from similar and additional defects with respect to plaintiff's mental limitations.  Plaintiff was treated for serious mental illness over the course of several years at the same facility - List Psychological Services. She treated with multiple psychiatrists and therapists over the course of several years.  All of their treatment notes, diagnoses, and opinions appear to be quite consistent with each other, yet the ALJ gave all of them little or no weight.  While the Commissioner is correct that the opinions of the therapists are not from "acceptable medical sources," that does not mean they should be disregarded.  The Sixth Circuit recently summarized the Commissioner's rules regarding how to evaluate medical opinions in *Gayheart v. Comm'r of Soc. Sec.*, *supra*:

> "The Commissioner has elected to impose certain standards on the treatment of medical source evidence." Cole, 661 F.3d at 937. These standards, set forth in administrative regulations, describe (1) the various types of evidence that the Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. § 404.1520b. Such evidence may contain medical opinions, which "are statements

from physicians and psychologists ... that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis," physical and mental restrictions, and what the claimant can still do despite his or her impairments. 20 C.F.R. § 404.1527(a)(2). Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id*. § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id*. § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id*., as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id*. § 404.1527(c)(2)-(6).

> The Commissioner is required to provide "good reasons"

for discounting the weight given to a treating-source opinion. *Id*. § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id*. § 404.1527(c)(6).

*Id*. at 375-376.

As to Dr. Gill, one of plaintiff's treating psychiatrists, the ALJ gave his opinions little weight because of infrequent visits with Dr. Gill and because his opinions were not supported by the record evidence as a whole. The ALJ does not describe what evidence is inconsistent with Dr. Gill's opinions. The ALJ rejects Dr. Binkley's opinions because they do not account for the period under consideration and are inconsistent with the medical record as a whole. The ALJ also says that the opinions are inconsistent with each other and do not account for

plaintiff's recent improvement.  While Dr. Binkley first treated plaintiff in 2007,
before the period at issue, the ALJ does not explain how he can discount Dr.
Binkley's opinions from 2009 and 2010, which are obviously from the period
under consideration and are part of the longitudinal record of plaintiff's mental
health treatment from List Psychological between 2007 and 2011.  In addition, the
ALJ does not explain how Dr. Binkley's opinions are internally inconsistent or
inconsistent with the medical record.

        The ALJ does not apply the same scrutiny to the opinions of the consulting
physicians, only one of whom actually examined plaintiff.  As explained in
*Gayheart*, "[the ALJ's] failure to apply the same level of scrutiny to the opinions
of the consultative doctors on which he relied, let alone the greater scrutiny of
such sources called for by 20 C.F.R. § 404.1527, further demonstrates that his
assessment of [the treat physician's] opinions failed to abide by the
Commissioner's regulations and therefore calls into question the ALJ's analysis."
*Id*. at 379.  The Sixth Circuit acknowledged that a "properly balanced analysis
might allow the Commissioner to ultimately defer more to the opinions of
consultative doctors that treating physicians," "but the regulations do not allow the
application of greater scrutiny to a treating source opinion as a means to justify
giving such an opinion little weight."  *Id*. at 379-80.  The Court also indicated that,
in the end, while the record might not support giving controlling weight to the

treating physician opinions, this Circuit does not hesitate to remand when the Commissioner has not provided good reasons for failing to give those opinions controlling weight. *Id*. at 380, citing *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011).

In this vein, the ALJ's treatment of all of these treating mental health opinions as so discrete and separate, given that plaintiff was being treated for her mental illness over a five year period in mostly the same clinic, with a variety of psychiatrists and therapists, illogically parses them and subjects them to undue scrutiny. To illustrate this point, the undersigned has constructed a chart of the mental health treatment received by plaintiff from the indicated mental health professionals:

| | |
|---|---|
| 11/12/07 (Tr. 536-38) | Binkley (List) |
| 10/6/08 (Tr. 539-41) | Binkley (List) |
| 8/17/09 (Tr. 460) | Binkley (List) |
| 9/14/09 (Tr. 543-46) | Binkley (List) |
| 10/26/09 (Tr. 458) | Binkley (List) |
| 3/2/10 (Tr. 317-26) | McGee (TBHS Clinical Services) |
| 3/8/10 (Tr. 327) | Hight (TBHS Clinical Services) |
| 3/22/10 (Tr. 328) | Hight (TBHS Clinical Services) |
| 4/8/10 (Tr. 329) No Show | Hight (TBHS Clinical Services) |
| 4/21/10 (Tr. 330) No Show | Hight (TBHS Clinical Services) |

| | |
|---|---|
| 5/20/10 (Tr. 333) Adm. D/C | McGee (TBHS Clinical Services) |
| 8/19/10 (Tr. 465-74) | Wendling (List) |
| 9/7/10 (Tr. 461-64) | Wendling (signed by Psychiatrist) (List)[4] |
| 9/16/10 (Tr. 455-57) | Binkley (List) |
| 9/21/10 (Tr. 508) | Wendling (List) |
| 10/5/10 (Tr. 509) | Wendling (List) |
| 10/12/10 (Tr. 478) | Gill (List) |
| 11/1/10 (Tr. 511) | Wendling (List) |
| 11/9/10 (Tr. 512) | Gill (List) |
| 12/7/10 (Tr. 513) | Wendling (signed by Psychiatrist) (List) |
| 1/13/11 (Tr. 514) | Gill (List) |
| 3/6/11 (Tr. 515-16) | Wendling (signed by Psychiatrist) (List) |

While there are gaps in treatment over the course of five years, plaintiff's treatment was fairly consistent. Some of the gaps are based on insurance problems. For instance, plaintiff lost her insurance in 2011 and was unable to continue treatment. (Dkt. 8-2, Pg ID 69; Dkt. 8-6, Pg ID 254). In late 2009,

---

[4] The undersigned also points out that the ALJ did not appear to notice that some of Ms. Wendling's opinions and reports were also signed by a treating psychiatrist, who would be considered an "acceptable medical source." Notably, several courts have concluded that where a licensed social worker or other unacceptable medical source is working as part of a treatment team and an acceptable medical source has "signed off" on the opinions, they should be evaluated as a treating physician opinion. *See e.g.*, *Gomez v. Chater*, 74 F.3d 967, 970-971 (9th Cir. 1996) (non-medical source must be integral to team, and the acceptable medical source must undersign her findings); *Keith v. Astrue*, 553 F.Supp.2d 291, 301 (W.D.N.Y. 2008) (ALJ erred and remand required where the ALJ discounted the reports and notes signed by a psychiatrist because they were primarily prepared by a social worker); *Wethington v. Astrue*, 2009 WL 2485395 (W.D. Ky. 2009) (Social worker's records were signed by treating psychiatrist, who would be an "acceptable medical source" and whose opinion may be entitled to controlling weight under the treating physician rule).

2:13-cv-12076-PDB-MJH   Doc # 16   Filed 07/15/14   Pg 51 of 57   Pg ID 706

plaintiff was discharged from treatment at List Psychological because she lacked medical insurance. (Dkt. 8-3, Pg ID 108; Dkt. 8-8, Pg ID 494). Plaintiff then began to treat at TBHS, where she was discharged for failure to attend her sessions. Only a few months later, plaintiff returned to treatment at List Psychological. The ALJ does not connect the dots between a few short gaps in mental health treatment over a five year period and how he can, therefore, discount the opinion of every treating mental health provider in the record.

In addition, the ALJ did not fully consider the treatment records from plaintiff's therapists in this case. Under Titles II and XVI: Considering Opinions And Other Evidence From Sources Who are Not "Acceptable Medical Sources" In Disability Claims; Considering Decisions On Disability By Other Governmental And Nongovernmental Agencies, SSR 06-03p, 2006 WL 2329939 (August 9, 2006), the Commissioner will consider all available evidence in an individual's case record, including evidence from "acceptable medical sources" and "other sources." It is true that only "acceptable medical sources" as defined under 20 C.F.R. § 416.913(a) can provide evidence which establishes *the existence* of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. Thus, information from such "other sources" cannot establish the existence of a medically determinable impairment; however, such information "may provide

Report and Recommendation
Cross-Motions for Summary Judgment
*Guyaux v. Comm'r*; Case No. 13-12076

51

insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in their professional capacities include how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). SSR 06-03p further provides that ALJs "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the reasoning. *Id.*

As to plaintiff's therapist, Ms. Wendling, the ALJ merely concluded that she was a non-acceptable medical source and "to the extent that the information provided by claimant's therapist is not consistent with the medical evidence of record, it is given little weight." (Dkt. 8-2, Pg ID 56). This conclusion is not further explained and the undersigned is not able to follow the reasoning of the ALJ for this treatment of Ms. Wendling's opinions. The ALJ reached similar conclusions as to the opinions of therapist McGhee, but also indicated that Mr. McGhee's conclusions were based on "purely subjective complaints." Had this been the only mental health treatment received by plaintiff over the course of five

years, the undersigned could understand where Mr. McGhee's opinions, based on a short period of treatment of plaintiff, could be viewed in this manner. However, as described above, in the context of plaintiff's fairly extensive mental health treatment over the course of several years, this summary rejection was not appropriate and does not allow for meaningful review of the ALJ's decision.

The parties are in disagreement over the meaning and weight to be given to any of plaintiff's GAF scores. Courts in this district do not accord controlling weight to GAF scores. *Bryce v. Comm'r of Soc. Sec.*, 2014 WL 1328277 *9 (E.D. Mich. 2014). In fact, the Sixth Circuit has held that an ALJ's failure to refer to a GAF score does not make his or her RFC analysis unreliable. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009) (noting that a GAF score is a subjective determination); *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 511 (6th Cir. 2006) (concluding that low GAF scores failed to show that the ALJ's decision was not supported by substantial evidence, because, in part, the court was not "aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place").

Just as in *Bryce*, plaintiff here relies principally on Administrative Message 13066 ("AM-13066"), dated July 22, 2013, which states in part, "We consider a GAF rating as opinion evidence." Notably, as in *Bryce*, this administrative message was released after the ALJ completed her decision. *Id*. at *9. What is more, as one court explained, a GAF score, by itself, carries little weight even under AM–13066:

> Nor does the Court find error in the ALJ's failure to discuss Dr. Deutsch's assessment of a GAF score of 40. Plaintiff cites a reference to GAF scores in a superseded edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM), Fourth Edition, DSM–IV, but the most recent version of the DSM does not include a GAF rating for assessment of mental disorders. DSM–V 16–17 (5th ed.2013). Furthermore, in Administrative Message 13066 ("AM-13066"), issued January 201[3], the SSA noted:

> [A] GAF needs supporting evidence to be given much weight. By itself, the GAF cannot be used to "raise" or "lower" someone's level of function. The GAF is only a snapshot opinion about the level of functioning. It is one opinion that we consider with all the evidence about a person's functioning. *Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis*.

*Id*. at *10, quoting *Nienaber v. Colvin*, 2014 WL 910203, at *4 (W.D. Wash. 2014) (emphasis supplied in *Bryce*). In the present case, the ALJ did not ignore the GAF scores or completely disregard them. Rather, he used the variance in

GAF scores to undermine the validity of the treating physicians' and therapists' opinions. That is, even though a GAF score is a "snapshot" of a person's functioning on a particular day, the ALJ here used the variance in GAF scores over a several year period to undermine the validity of the mental health treaters' opinions. The ALJ used the variance in GAF scores to discredit all of the opinions in such a way that does not appear contemplated by the case law on how to properly consider a GAF score, particularly in light of the analysis above regarding the ALJ's analysis of the treating source opinions.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** under sentence four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 15, 2014                       s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>July 15, 2014</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>John L. Wildeboer, Niranjan Emani, Theresa M. Urbanic.</u>

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Guyaux v. Comm'r*; Case No. 13-12076
